IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


EMPLOYERS MUTUAL CASUALTY COMPANY                    PLAINTIFF

VS.                        CIVIL ACTION NO. 5:10-cv-137(DCB)(RHW)

CHARLIE RADDIN; JACOB WOODARD;
KYLE CORLEY; BRIAN STEPHENSON;
JEROLD HOLLOWELL; RICHARD DARDEN;
THE YAZOO CITY MEDICAL CLINIC;
AND JOHN DOES 1-20                                   DEFENDANTS


MEMORANDUM OPINION AND ORDER

This cause is before the Court on the plaintiff Employers Mutual Casualty Company's motion for summary judgment **(docket entry 37)**, and on defendant Yazoo City Medical Clinic's cross motion for declaration of duty to defend and/or declaration of coverage **(docket entry 50)**. Having carefully considered the motions and responses, the memoranda and the arguments of the parties, as well as the legal authorities cited therein, and being fully advised in the premises, the Court finds as follows:

On or about May 26, 2010, Charlie Raddin, Jacob Woodard, Kyle Corley, Brian Stephenson and John Does 1-20 commenced a civil action against Richard Darden; Manchester Education Foundation, Inc.; Mississippi Association of Independent Schools, Inc. ("MSAIS"); and the Yazoo City Medical Clinic ("the Clinic") in the Circuit Court of Yazoo County, Mississippi.

On August 19, 2010, Employers Mutual Casualty Company ("EMC") filed its Complaint for Declaratory Judgment in this Court.

On or about December 3, 2010, Charlie Raddin, Jacob Woodard, Kyle Corley, Brian Stephenson, Jerold Hollowell and John Does 1-20 filed an Amended Complaint against Richard Darden; Manchester; MSAIS; the Clinic; Dr. William Thompson; Guideone Mutual Insurance Company; Medical Assurance Company of Mississippi and Tudor Insurance Company in the Circuit Court of Yazoo County, Mississippi.

On May 3, 2011, EMC filed the Amended Complaint for Declaratory Judgment presently pending before this Court.

The Underlying Amended Complaint in Yazoo County Circuit Court arises out of allegations that Richard Darden, while he was the Dean of Students at Manchester Academy ("Manchester") in Yazoo City, engaged in acts of "inappropriate misconduct and other tortious behavior against Plaintiffs." The Underlying Amended Complaint further alleges:

18. Richard Darden was the dean of students of Manchester until May 7, 2010. He had been with the school for over 25 years. He also acted as a ninth grade biology teacher and as a coach/"trainer" with the football team and other sports teams at Manchester.

19. Plaintiffs will show that on various occasions throughout Darden's tenure at Manchester up and until May 7, 2010, that Defendants allowed Darden, through the use of his power, authority and trust as an administrator, teacher and coach at Manchester, to engage in wrongful, illegal, tortious, negligent and otherwise improper conduct toward Plaintiffs.

20. In support of their claims, Plaintiffs would show the following:

(a) That Darden invited Plaintiffs to his home which is

2

located in Yazoo City, Mississippi approximately 1/2 a mile from Manchester. Many of these invitations were made at the school by Darden while he was engaged in instructing the Plaintiffs as students of Manchester;

(b)   That such visits to Darden's home were allowed, condoned, supported, encouraged and ratified by Defendants Manchester and the MSAIS;

(c)   That Darden had Plaintiffs stay overnight at his house and engage in other activities giving Darden close and private access to Plaintiffs and other students;

(d)   That Manchester and the MSAIS benefitted from the use of Darden's house as a "clubhouse" and/or adjunct field house for the athletic teams and other male students;

(e)   That Darden and Manchester invited students and, in particular, athletes to shower at Darden's house as an ad-hoc field house for the male sports teams of Manchester;

(f)   That Manchester knew of, encouraged, and benefitted from the use of Darden's house as a field house and/or team room for the school's male athletic teams.  Under the supervision of Manchester, Darden's house was used for numerous team and school functions including showering after games and practices, team and school meetings, unlicensed and inappropriate team "physicals," and other team and/or school events all sanctioned, allowed, supervised and ratified by Manchester and the MSAIS;

(g) That Darden administered unlicensed "physical exams" and other purported medical "examinations" to Plaintiffs allowing him to come in direct contact with the Plaintiffs' genitalia at Darden's residence, at Manchester, at the offices of the Yazoo City Medical Clinic and other places.  These physicals were conducted even though Darden had no license to administer the physicals and was not a licensed physician, licensed nurse practitioner or licensed athletic trainer. Plaintiffs and their parents were advised that the physicals were required to be conducted by Darden in order for the students to be eligible to participate in football and in other sports at Manchester;

(h)  That despite Darden being legally and morally unable to conduct these physicals, he operated under the authority of Defendants Manchester, the MSAIS, and the Yazoo City Medical Clinic in wrongfully examining Plaintiffs and other students;

(i) That Darden threatened to suspend or otherwise punish Plaintiffs and other students for school-related behavior unless they endured private paddlings at Darden's residence;

(j)  That Darden had inappropriate physical contact with Plaintiffs in various places, including, but not limited to, his home, Manchester and the Yazoo City Medical Clinic;

(k)  That unbeknownst to Plaintiffs and other students who slept, showered and otherwise used Darden's house as an adjunct field house/team hang-out, Darden used various concealed devices and operations to view Plaintiffs and other students who showered, changed clothes and/or slept at his private residence on hundreds of occasions.  Upon information and belief, Darden used various covert methods of viewing Plaintiffs in the nude while showering, changing clothes and/or sleeping;

(l)  That Darden caused the Plaintiffs to be watched, viewed and otherwise spied upon while they were not clothed in various places while Plaintiffs were minors and without their knowledge and consent; and

(m)  That Darden administered numerous improper drug tests at his home, at the school and at the Yazoo City Medical Clinic whereby he would watch, view and otherwise look upon students while they were unclothed and urinating in a cup.

21.  On May 7, 2010, current male students at Manchester discovered Darden's secret room in his home and confirmed it was used to voyeuristically watch minor boys.  The students went public by reporting what they found to their parents and the authorities. This information, previously unknown and unknowable to Plaintiffs, alerted authorities and Plaintiffs of Darden's actions.

22.  Thereafter, Darden resigned from his position with Manchester amid accusations that he used his position with the school to voyeuristically invade the privacy of

male students who attended Manchester.
Underlying Amended Complaint, ¶¶ 18-22.

The Underlying Amended Complaint further alleges that the actions and inactions of the Underlying Defendants other than Darden allowed and emboldened Darden to engage in the allegedly tortious conduct. Specifically, the Underlying Plaintiffs allege that Darden was inappropriately viewing them while nude/unclothed, and inappropriately touched their genitalia while conducting unlicensed and inappropriate team physicals. The Underlying Amended Complaint sets forth the following claims: Count I: Invasion of Privacy, Count II: Outrage, Count III: Infliction of Emotional Distress, Count IV: Battery, Count V: Battery by Improper Physicals, Count VI: Negligence, Count VII: Negligent Hiring, Count VIII: Negligent Training, Count IX: Negligent Supervision, Count X: Negligent Entrustment, Count XI: Negligent Retention, Count XII: Breach of Contract, and Count XIII: Breach of Fiduciary Duty. The claims set forth by the Underlying Plaintiffs arise out of Darden's intentional conduct and/or are derivative and interdependent on Darden's intentional conduct, and arise out of the remaining Underlying Defendants' intentional conduct.

First and foremost, EMC asserts in its Rebuttal Brief that none of the alleged conduct, including physicals and drug tests, occurred and/or was committed during the applicable dates of the EMC policies. The EMC policies were only in effect from April 15,

2005, through August 1, 2008. In their responses to interrogatories in the Yazoo County Circuit Court proceedings, the Underlying Plaintiffs state that the examinations complained of took place between 1995 and 2003. The Clinic, also in interrogatory responses in the state court proceedings, contend that Darden performed no examinations at the Clinic after the year 2000. Therefore, none of the conduct alleged by the Underlying Plaintiffs could have taken place after 2003; therefore, the EMC policies do not apply and there is no coverage.

In the alternative, EMC asserts that coverage is not provided under the subject policies for the underlying claims, because: (1) the Underlying Amended Complaint does not allege "bodily injury", "property damage", or "personal or advertising injury" as defined in the policies; (2) the Underlying Amended Complaint does not allege an "occurrence" as defined in the policies and as governed by Mississippi law and/or (3) the allegations of the Underlying Amended Complaint are excluded by the "expected or intended injury" exclusion, the "professional services" exclusion, and the "abuse or molestation" exclusion.

From April 15, 2005, through August 1, 2008, the Clinic had in effect EMC policy numbers 3W2-15-29-06; 3W2-15-29-07; 3W2-15-29-08 and 3W2-15-29-09 at the various times shown on the policies. The policies list the Clinic as the named insured and are business policies. All of the policies only provide coverage for "bodily

injury" or "property damage" if it is caused by an "occurrence," which is defined as an "accident." In addition, EMC asserts that all of the policies contain various exclusions which preclude coverage for the Underlying Plaintiffs' claims.

As a result of the underlying lawsuit in Yazoo County Circuit Court, the Clinic asserted a claim for insurance benefits, including defense and indemnity, for the allegations of the lawsuit. EMC contends that it investigated the claims in accordance with the terms of the subject policies and determined that the Clinic is not owed a defense or indemnification under the terms of the policies. EMC has commenced the present declaratory judgment action seeking judicial confirmation that the underlying claims are not covered under the EMC policies.

The Federal Rules of Civil Procedure provide that summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

"The construction and effect of an insurance policy are matters of law to be decided by the court." Jones v. Southern Marine & Aviation Underwriters, Inc., 888 F.2d 358, 360 (5th Cir. 1989)(citations omitted). Inasmuch as this Court's jurisdiction is grounded in diversity, the oft-cited case of Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), commands the Court to employ the substantive law of the appropriate state to determine the outcome

of this dispute.  See Sentry Ins. v. R.J. Weber Co., 2 F.3d 554, 556 (5th Cir. 1993).

Regarding construction of insurance policies, Mississippi law is clear that an insurance contract, like any other contract, must be interpreted according to its terms.  Foreman v. Continental Casualty Co., 770 F.2d 487, 489 (5th Cir. 1985).  The interpretation of an insurance policy is a question of law for the court when the meaning of the terms is clear and unambiguous.  See Aero Int'l, Inc. v. United States Fire Ins. Co., 713 F.2d 1106, 1109 (5th Cir. 1983); Reece v. State Farm Fire & Cas. Co., 684 F.Supp. 140, 143 (N.D. Miss. 1987).  "No rule of construction requires or permits the court to make a contract differing from that made by the parties themselves, or to enlarge an insurance company's obligations where the provisions of its policy are clear.'"  Id. at 489 (quoting State Auto. Mut. Ins. Co. v. Glover, 176 So.2d 256, 258 (Miss. 1965)).

"Where terms of insurance contracts are ambiguous or doubtful, the contract must be construed most favorably to insured and against insurer.  Terms of insurance policies are construed favorably to insured wherever reasonably possible, particularly exclusion clauses."  State Farm Mut. Auto. Ins. Co. v. Scitzs, 394 So.2d 1371, 1372 (Miss. 1981).  "A supplemental rule of construction is that when the provisions of an insurance policy are subject to two interpretations equally reasonable, that

interpretation which gives greater indemnity to the insured will prevail." <u>Caldwell v. Hartford Accident & Indemnity Co.</u>, 160 So.2d 209 (Miss. 1960).

However, it is also well-settled law that "the special rules favoring the insured are only applicable when there is an ambiguity ... [and that] courts ought not to strain to find such ambiguities, if, in so doing, they defeat probable intentions of the parties ... even when the result is an apparently harsh consequence to the insured." Courts will neither create an ambiguity where none exists nor make a new contract for the parties. If the policy language is clear, unequivocal, and, hence unambiguous, its terms will be enforced. <u>Brander v. Nabors</u>, 443 F.Supp. 764, 769 (N.D. Miss. 1978) (internal citations omitted).

In determining whether an insurance policy is ambiguous, "[t]he mere fact that policy language requires interpretation does not render the policy ambiguous." <u>Employers Ins. of Wausau v. Trotter Towing Corp.</u>, 834 F.2d 1206, 1210 (5th Cir. 1988) (citations omitted). The construction of an insurance contract is limited to an examination of the "written terms" of the policy itself. <u>Employers Mut. Casualty Co. v. Nosser</u>, 164 So.2d 426, 430 (Miss. 1964). The policy itself is the sole manifestation of the parties' intent, and no extrinsic evidence is permitted absent a finding by a court that the language is ambiguous and cannot be understood from a reading of the policy as a whole. <u>Cherry v. Anthony, Gibbs,</u>

<u>Sage</u>, 501 So.2d 416, 419 (Miss. 1987). If an insurance contract is clear and unambiguous, the language therein must be given its plain meaning. <u>Gulf Nat'l Bank v. United States Fire Ins. Co.</u>, 713 F.2d 1106, 1109 (5th Cir. 1983); <u>see</u> <u>also</u> <u>Putman v. Insurance Co. of North America</u>, 673 F.Supp. 171, 175 (N.D. Miss. 1987)("Mississippi law requires that the words of the contract be given their ordinary meaning.")(citing <u>Mississippi Power and Light v. United Gas Pipe Line</u>, 760 F.2d 618 (5th Cir. 1985)). The Court must construe the policy in a manner that effectuates the parties' intentions. <u>See Western Line Consol. School Dist. v. Continental Cas. Co.</u>, 632 F.Supp. 295, 302 (N.D. Miss. 1986) (citing <u>Monarch Ins. Co. v. Cook</u>, 336 So.2d 738, 741 (Miss. 1976)).

The insurance policies issued by EMC only provide coverage for "bodily injury," "property damage" and "personal and advertising injury." "Bodily injury" is defined in the policies as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The Underlying Plaintiffs claim that the Underlying Defendants caused them to suffer "mental anguish, pain, suffering, duress, nervousness, depression, anxiety, embarrassment, humiliation and economic losses in the past and Plaintiffs will experience mental anguish, pain, suffering, duress, nervousness, depression, anxiety, embarrassment, humiliation and economic losses in the future as a result of [the Underlying] Defendants' actions." Underlying Amended Complaint, ¶¶

30, 38, 45, 50, 56, 65, 71, 81, 91, 101, 111, 121 and 135. The Underlying Plaintiffs do not allege that they received any "bodily injury" as it is defined in the EMC policies.

Allegations of mental/psychological and emotional injuries by themselves do not qualify as "bodily injury." In <u>Travelers Indem. Co. v. Holloway</u>, 17 F.3d 113 (5th Cir. 1994), the Fifth Circuit, relying on its own interpretation of an insurance policy in the absence of Texas precedent, construed a policy defining "bodily injury" as "bodily injury, sickness or disease, including death resulting therefrom, sustained by any person." <u>Id</u>. at 115. The court found that where the complaint alleged extreme pain, suffering, emotional anguish, and emotional trauma, the phrase "bodily injury" unambiguously excluded the types of non-physical injuries asserted. <u>Id</u>.

In 1996, the district court for the Northern District of Mississippi confronted the issue in <u>Siciliano v. Hudson</u>, 1996 WL 407562 (N.D. Miss. April 3, 1996). The policy in that case defined "bodily injury" as "bodily harm sickness or disease, including required care, loss of services and death resulting therefrom." <u>Id</u>. at *5. Finding no Mississippi Supreme Court case addressing the issue, the court relied on the Fifth Circuit's reasoning in <u>Holloway</u>, as well as "the explications of the overwhelming majority of other states," in holding that to qualify as "bodily injury" under an insurance policy, there must be some allegation of

physical injury to the body; therefore, mental anguish and mental damages are not included within the definition of "bodily injury." Id. at *6-7.

In 1999, the Mississippi Supreme Court decided Lincoln County School District v. Doe, 749 So.2d 943 (Miss. 1999). In this case, the court found that "claims for emotional distress, pain and suffering, fear of contracting a dangerous and/or deadly disease, and humiliation ... are in the nature of emotional and intangible injuries and do not fall within the policy's definition of 'bodily injury,' which clearly applies only to physical injuries, including sickness and disease." Id. at 945-46.

No allegations of physical injury to the body are made in the Underlying Amended Complaint. Even Darden's unwanted touching of the Underlying Plaintiffs would not constitute "bodily injury." The Underlying Plaintiffs allege that Darden touched them when he conducted unlicensed physical exams; however, the Underlying Amended Complaint does not contain any allegations that Darden's touching of the Underlying Plaintiffs actually caused them to suffer "bodily injury." Darden's unwanted touching of the Underlying Plaintiffs by itself does not constitute "bodily injury." See American Nat'l Gen. Ins. v. Jackson, 203 F.Supp.2d 674, 677 (S.D. Miss. 2001)(allegations of unwanted sexual touching do not qualify as "bodily injury for purposes of liability insurance coverage"). Since the Underlying Plaintiffs have not

presented an injury within the "bodily injury" provisions of the EMC policies, the Court finds that EMC has no duty to indemnify or defend these claims.

"Property Damage" is defined in the EMC policies as "[p]hysical injury to tangible property, including all resulting loss of use of that property." In the Underlying Amended Complaint, the Underlying Plaintiffs allege that the Clinic breached its contract with the plaintiffs to provide them with a quality licensed physical examination in a safe comfortable environment. As a result, the Underlying Plaintiffs claim that they have suffered economic loss. Underlying Amended Complaint, ¶¶ 122-127 and 128-135. However, the Underlying Plaintiffs do not claim that the alleged breach of contract resulted in any physical damage to tangible property or loss of use of that property. Rather, the Underlying Plaintiffs assert that they have only suffered economic loss. Breach of contract claims resulting in pure economic loss, without physical damage to property, are pecuniary in nature and do not constitute "property damage." Audubon Ins. Co. v. Stefancik 98 F.Supp.2d 751, 756 (S.D. Miss. 1999). Accordingly, the Underlying Plaintiffs' claims for breach of contract resulting in pure economic loss do not constitute "property damage" within the meaning of the EMC policies.

In addition to requiring an allegation of a covered injury, the EMC policies also limit coverage to "bodily injury" and/or

"property damage" caused by an "<u>occurrence</u>." The policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Thus, the policies require that the Underlying Plaintiffs allege an "occurrence" (i.e. an accident) before coverage is available.

In interpreting the "occurrence" provision, the Mississippi Supreme Court has instructed that the focus is on the act alleged and not on whatever unintended damages flowed from that act. <u>Architex Association, Inc. v. Scottsdale Insurance Company</u>, 27 So.3d 1148, 1153-54 (Miss. 2002)(in determining whether there has been an "occurrence," "[t]he only relevant consideration is whether, according to the declaration, the chain of events leading up to the injuries complained of were set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force"). Nor does Mississippi law recognize intentional or deliberate acts as "occurrences," even if the insured did not intend the resulting harm. <u>Acceptance Ins. Co. v. Powe Timber Co.</u>, Inc., 403 F.Supp.2d 552, 555 (S.D. Miss. 2005).

The Underlying Plaintiffs' allegations all originate from, <u>inter</u> <u>alia</u>, Richard Darden's alleged intentional administration of improper drug tests, intentional administration of unlicensed physical examinations, intentional touching of the Underlying Plaintiffs' genitalia and intentional viewing of them while they

were undressed.  The allegations against the Underlying Defendants who are not alleged to have actually participated in touching the Underlying Plaintiffs' genitalia and intentionally viewing them while they were nude/unclothed are entirely derivative of Darden's alleged intentional sexual misconduct.  The alleged actions of the Clinic independent of those of Darden also constitute intentional conduct.  Accordingly, the allegations of the Underlying Amended Complaint fail to allege an "occurrence" as required by the policies.

The Underlying Plaintiffs allege that Darden's intentional actions invaded their right to privacy, were outrageous, and caused the Underlying Plaintiffs various psychological injuries.  The Underlying Plaintiffs also allege that the Clinic negligently allowed and ratified Darden's conduct by its actions.  Darden's intentional actions do not constitute an "occurrence" and are clearly excluded under the terms and conditions of the policies. Although the Underlying Plaintiffs allege "negligence" against the Clinic, all of the conduct from which the alleged damages arose was allegedly intentional and not accidental.

"[U]nder Mississippi law, the duty of an insurer to defend its insured against legal claims asserted by a third party is determined by the allegations in the ... complaint."  Employers Reinsurance Corp. v. Martin, Gordon & Jones, Inc., 767 F.Supp. 1355, 1359-60 (N.D. Miss. 1991).  "However it is the facts alleged,

not the pleader's legal conclusions, that are relevant to the insurer's duty to defend." Id. In this case, the underlying allegations of "negligence" against the Clinic do not correspond with any factual allegation of accidental conduct. The factual allegations strictly relate to Darden's alleged intentional administration of improper drug tests, intentional administration of unlicensed physical examinations, intentional touching of the Underlying Plaintiffs' genitalia, and intentional viewing of them while they were nude. Under Mississippi law, negligence is not synonymous with "accident."

> [I]t would make no difference whether appellant's acts were prompted by malice or negligence, or some other motivating force. The only relevant consideration is whether, according to the declaration, the chain of events leading up to the injuries complained of were set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force.

Allstate Ins. Co. v. Moulton, 464 So.2d 507, 509 (Miss. 1985).

The Underlying Amended Complaint alleges that the Clinic allowed Darden to conduct unlicensed physicals and improper drug tests, and that it knew or should have known that the physicals and drug tests were being administered. There are no allegations that the Clinic accidentally allowed the physicals and drug tests to occur. To the extent there was a mistake or accident on the Clinic's part, it would appear to have been a mistake in believing that Richard Darden was licensed to conduct physicals and/or drug tests. Nevertheless, the Clinic is alleged to have intended to

16

allow Darden to conduct the physicals and/or drug tests on the Underlying Plaintiffs. Because the Clinic's actions were "set in motion and followed a course consciously devised and controlled by [the Clinic] without the unexpected intervention of any third person or extrinsic force," there is no "occurrence." See United States Fidelity & Guaranty Co. v. Omnibank, 812 So.2d 196, 201 (Miss. 2002). Therefore, the Underlying Plaintiffs' claims of invasion of privacy, outrage, and infliction of emotional distress do not constitute "occurrences."

In the Underlying Amended Complaint, the Underlying Plaintiffs assert that they were battered by Darden's actions in conducting unauthorized/unlicensed physicals on them. The alleged battery allegations all arise out of Darden's alleged sexual misconduct in touching the Underlying Plaintiffs' genitalia. Under Mississippi law, sexual abuse is an inherently injurious act as to which the law will infer intent. Thus, regardless of how the allegations are worded in a particular complaint, sexual abuse will be considered intentional conduct. American Manufacturers Mut. Ins. Co. v. Stallworth, 433 F.Supp.2d 767, 772 (S.D. Miss. 2006). The alleged actions of Darden in intentionally spying on the plaintiffs and conducting unlicensed physical examinations would have been actions that Darden intended, set in motion, and/or consciously planned. Thus, his alleged acts would not constitute "occurrences." The Underlying Plaintiffs further allege that the Clinic and the

remaining Underlying Defendants negligently allowed and ratified Darden's conduct. These alleged acts would likewise not be considered an "occurrence" under Mississippi law since they require intent, and would be non-accidental conduct. See Employers Reinsurance Corp., 767 F.Supp. at 1359-60.

In Counts VI through XI of the Underlying Amended Complaint, the Underlying Plaintiffs assert that the remaining defendants are liable for Darden's actions as a result of their negligence, negligent hiring, negligent training, negligent supervision, negligent entrustment and negligent retention. In American Guarantee and Liability Ins. Co. v. 1906 Co., 129 F.3d 802 (5th Cir. 1997), the Fifth Circuit Court of Appeals considered a Mississippi case in which a photographer had surreptitiously videotaped young women dressing and undressing in his studio dressing room. When his actions were discovered, 21 women filed lawsuits against the photographer alleging various causes of action, including invasion of privacy, outrage, intentional infliction of emotional distress, fraud, negligence, and exploitation of minors. The complaints also included allegations that the photographer's employer was vicariously liable for his actions and for its own negligence in hiring, supervising and entrusting the photographer with equipment owned by the company. The Fifth Circuit recognized that the underlying action of the photographer was clearly intentional and excluded by the insurance policy. The court further recognized

that, although no Mississippi Supreme Court case had addressed the issue, the Fifth Circuit, in applying the law of neighboring jurisdictions, had repeatedly held that there is no coverage for an employer or supervisory personnel for claims of negligent hiring or supervision when the underlying tortious conduct is intentional. The court held:

> Although we have found no Mississippi cases addressing this issue, this Court, in applying the law of neighboring jurisdictions, has repeatedly rejected [the] argument [that there is coverage].  These cases hold that no coverage is provided the employer or supervisory personnel for claims of negligent hiring or supervision when the underlying tortious conduct is intentional and when those claims against the employer or supervisor are related to and are interdependent on the employee's intentional misconduct.  See Cornhill Insurance PLC. v. Valsamis, Inc., 106 F.3d 880, 87 (5th Cir. 1997)("[W]here liability premised on negligence is related to and interdependent of other tortious activities, the 'ultimate issue' is whether the tortious activities themselves are encompassed by the 'occurrence' definition."); New York Life Ins. v. Travelers Ins. Co., 92 F.3d 336, 339 (5th Cir. 1996) (excluding claims for negligent hiring, training, and supervision against employer that were "related to" and "interdependent on" claim of fraud by employee because employee's intent is imputed to employer); Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co., 99 F.3d 695, 703 (5th Cir. 1996)("Where the legal claims asserted by the plaintiffs are not independent and mutually exclusive, but rather related to and dependent upon excluded conduct, the claims are not covered, even if asserted against an insured who did not himself engage in the prohibited conduct."); Old Republic Ins. Co. v. Comprehensive Health Care Assoc., Inc., 786 F.Supp. 629, 632 (N.D. Tex. 1992), aff'd on other grounds, 2 F.3d 105 (5th Cir. 1993)(finding no duty to defend insured against claim of negligent hiring when the claim of negligent hiring arises out of agent's intentional sexual harassment); Columbia Mut. Ins. Co. v. Fiesta Mart, Inc., 987 F.2d 1124,1128 (5th Cir. 1993)(holding that under Texas law, where liability of insured and liability of its agent

were "related and interdependent," court must look to whether agent's fraud was covered by policy); <u>Huey T. Littleton Claims, Inc. v. Employers Reinsurance Corp.</u>, 933 F.2d 337, 339 (5th Cir. 1991)(holding that under Louisiana law, dishonest act exclusion in employer's commercial liability policy excluded negligence and vicarious liability claims against employer for losses based upon the excluded conduct of its employee).

<u>Id</u>. at 809.  The Fifth Circuit then predicted that the Mississippi Supreme Court would hold that such related or interdependent claims would be excluded from coverage:

> Although a close question, we conclude that Mississippi courts would likely follow the lead of neighboring jurisdictions and hold that where negligence claims against an employer, such as negligent hiring, negligent training, and negligent entrustment, are related to and interdependent on the intentional misconduct of an employee, the "ultimate question" for coverage purposes is whether the employee's intentional misconduct itself falls within the definition of an occurrence.  As we explained in <u>New York Life</u>, the issue turns largely on principles of agency and imputed intent.  <u>See</u> 92 F.3d at 340-41 ("<u>Fiesta Mart</u> resolves . . . whether an agent's intent or expectations will be imputed to a principal," and holds that "[w]hen an agent intends or expects an injury, such intent and knowledge will be imputed to the principal for purposes of determining whether there is an occurrence.").  We believe Mississippi courts would apply these same principles in resolving the issue.

<u>Id</u>. at 810. <u>See</u> <u>also</u> <u>Meyers v. Miss. Ins. Guaranty Assn.</u>, 883 So.2d 10, 16 (Miss. 2004)(finding that controlling case law in Mississippi is clear: claims of negligent entrustment, negligent supervision, and failure to train will not be recognized as independent acts of negligence sufficient to allow coverage under insurance policies and that "[m]ore broadly, application of the exclusion is not dependent on the theory of liability asserted.")

Even if the Underlying Defendants are not employers or supervisors of Darden, claims of negligent entrustment, negligent supervision, and failure to train are not recognized as "occurrences." In American Nat'l Gen. Ins. Co. v. Ryan, 274 F.3d 319 (5th Cir. 2001), Linda Isbell sued Charlotte Ryan for negligently failing to warn her of her minor son's proclivity to molest children. The court held, "where a third-party's liability is related to and interdependent on other tortious activities, the ultimate issue [in determining coverage] is whether the underlying tortious activities are encompassed within the definition of 'occurrence.'" Id. at 325 (quoting American States Ins. Co. v. Bailey, 133 F.3d 363, 371 (5th Cir. 1988)). Ryan holds that an occurrence-based policy provides no coverage to any third party for claims related to and interdependent on intentional conduct. Id. at 325.

In this case, the Underlying Plaintiffs' allegations of negligence, negligent hiring, negligent training, negligent supervision, negligent entrustment and negligent retention are interdependent on Darden's intentional actions in touching the Underlying Plaintiffs genitalia and viewing them while undressed and therefore do not constitute an "occurrence."

The EMC policies also provide coverage for "personal and advertising injury." "Personal and advertising injury" is defined by the policies as follows:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

The Underlying Plaintiffs have alleged a claim for invasion of privacy; however, the claim for invasion of privacy does not constitute a claim for "personal injury" under the policies. There is only coverage for the invasion of privacy under the EMC policies if it arises out of the oral or written publication of material. In this case, the Underlying Plaintiffs' claims for invasion of privacy do not involve any alleged written or oral publication of material. Neither Darden nor the Underlying Defendants are alleged to have published any material relating to the Underlying Plaintiffs. Accordingly, the policies issued to the Clinic do not provide a duty to defend or indemnify the Underlying Plaintiffs for

their claim of invasion of privacy.

In paragraphs 151 through 164 of the Underlying Amended Compliant, the Underlying Plaintiffs claim that they have alleged "personal injury" arising out of the invasion of their right of private occupancy of the private visitor rooms at the Clinic. The EMC policies issued to the Clinic state that EMC "will pay those sums that the insured becomes legally obligated to pay as damages because of ... 'personal and advertising injury' ... caused by an offense arising out of your business, but only if the offense was committed ... during the policy period." "Personal and advertising injury" is defined as: "injury, including consequential 'bodily injury' arising out of ... [t]he wrongful eviction from ... or invasion of the right of private occupancy of a room ... committed by or on behalf of its owner, landlord or lessor." Similar allegations were asserted against an employer in 1906 Co., in which the Fifth Circuit concluded that the policy would only provide a duty to defend and indemnify the plaintiffs if, inter alia, the alleged invasion of the right of private occupancy was committed during the policy period. The court stated, "[u]nder Mississippi law, the tort of invasion of privacy accrues when the plaintiff discovers or through exercise of reasonable diligence should have discovered the invasion." 273 F.3d at 618 (citing Tichhenor v. Roman Catholic Church, 32 F.3d 953, 962 (5th Cir. 1994) (acknowledging Mississippi's application of the discovery rule to

23

invasions of privacy involving "inherently undiscoverable" injury)). In <u>1906 Co.</u>, a handful of plaintiffs claimed that they were taped in 1990, but did not discover that their right to privacy was violated until 1991. The court determined that their claims did not accrue until 1991, as that was the time that they actually discovered the invasion of their right to private occupancy of a room.

In the Underlying Amended Complaint, the Underlying Plaintiffs claim that throughout Darden's tenure at Manchester Academy, the Clinic allowed Darden to engage in wrongful and illegal acts. Underlying Amended Complaint, ¶ 19. The Underlying Plaintiffs assert that they first discovered that Darden was voyeuristically watching minor boys on May 7, 2010. Pursuant to the discovery rule set forth in <u>1906 Co.</u>, the Underlying Plaintiffs' claim for invasion of the right to private occupancy of the visitors rooms at the Clinic did not accrue until May 7, 2010 – the time they first discovered Darden's tortious actions. Therefore, the Underlying Plaintiffs' claim for invasion of the right to private occupancy would only accrue under an EMC policy in effect on May 7, 2010. However, the Clinic did not have an insurance policy in effect on May 7, 2010. EMC insured the Clinic from April 15, 2005, until August 1, 2008. In addition, records of the Mississippi Secretary of State's office reveal that the Yazoo Medical Clinic was administratively dissolved on December 22, 2009, and therefore was

not in existence on May 7, 2010. There is therefore no duty to defend or indemnify the Clinic for the allegation of invasion of the right of private occupancy.

The policies also contain an "expected or intended injury" exclusion which states that, "[t]his insurance does not apply to 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured. The Underlying Amended Complaint alleges that all of the Underlying Defendants knew or should have known of Darden's actions and allowed and ratified Darden's conduct. Underlying Amended Complaint, ¶¶ 17, 20, 28, 36, 44, 48, 54, 59, 60, 63, 66, 69, 75, 85, 95, 105, 115 and 126. The Mississippi Supreme Court recognizes the validity of policy provisions excluding coverage for injuries intended by the insured. In determining whether the intentional injury exclusion applies, Mississippi Courts look to the act as well as the consequences of the act. In <u>Lewis v. Allstate Ins. Co.</u>, 730 So.2d 65 (Miss. 1998), the court noted that in Mississippi, "[an] act is intentional if the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it." All of the allegations asserted against the remaining Underlying Defendants assert acts which, it is alleged, the Underlying Defendants knew would either cause the Underlying Plaintiffs to sustain damage or that damage to the Underlying Plaintiffs was substantially certain to follow. Underlying Amended Complaint, ¶¶

20, 59, 60, 66, 75, 85, 95, 105 and 115. If the Underlying Defendants knew about the sexual misconduct as alleged, they would certainly know that damages would result to the Underlying Plaintiffs. Accordingly, the "expected and intended injury" exclusion of the policies containing the exclusion applies as an additional basis for no coverage.

The policies also contain a "professional services" exclusion which states that, "[t]his insurance does not apply to 'bodily injury,' 'property damage' or 'personal and advertising injury' caused by the rendering or failure to render any professional services. This includes but is not limited to: ... [m]edical ... or nursing services treatment ... [or] any health or therapeutic service treatment, advice or instruction." The Underlying Amended Complaint alleges that the Underlying Defendants allowed Darden to render professional medical or nursing services (sports physicals and drug tests) without being properly licensed. Underlying Amended Complaint, ¶ 20. As a result, the Underlying Plaintiffs claim various damages. Id., ¶ 50. The administration of medical sports physicals/drug tests falls under the policy's exclusion for "professional services," since it is medical/nursing treatment, advice and/or instruction. In fact, the Underlying Plaintiffs assert that the physicals are a medical examination that should have only been rendered by a licensed physician, nurse or athletic trainer. Id. at ¶ 20. Accordingly, the "professional services"

exclusion contained in the EMC policies applies as an additional basis for no coverage.

Finally, the Abuse or Molestation Exclusion Endorsement to policy 3W2-15-29-09 modifies the Businessowners Coverage Form by adding an exclusion to the "bodily injury," "property damage," and "personal and advertising injury" coverage provisions. This endorsement excludes injuries arising out of the "actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured." In addition, the endorsement excludes injury arising out of the negligent employment, investigation, supervision, reporting and retention of a person for whom any insured is or ever was legally responsible. In this case, the Underlying Plaintiffs' allegations all originate from, inter alia, Richard Darden's alleged abuse of the Underlying Plaintiffs by touching their genitalia and viewing them while unclothed. Darden's alleged misconduct amounts to actual or threatened abuse or molestation. The "abuse or molestation exclusion" endorsement applies to the actual or threatened abuse or molestation by "anyone" of any person. Darden would be considered "anyone." In order for the exclusion to apply, the alleged abuse or molestation must also happen while the person is in the care, custody and control of the insured. In this case, it is alleged that the physicals were conducted by Darden while at the Clinic and at his home. The exclusion is applicable to any harm caused by the

physicals that were conducted by Darden while at the Clinic. The Underlying Plaintiffs were in the care, custody and control of the Clinic and Darden when the alleged abuse took place. Thus the allegations of the Underlying Amended Complaint fit squarely within the "abuse or molestation exclusion" endorsement. Accordingly, the "abuse or molestation exclusion" endorsement applies as an additional basis for no coverage.

Under Mississippi law, it is well established that whether an insurer has a duty to defend an insured is determined by the allegations of the Complaint, and the insurer only has an obligation to defend when the pleadings state facts which bring the injury within coverage under the policy. See Southern Farm Bureau Cas. Ins. Co. v. Logan, 119 So.2d 268, 271 (Miss. 1960); State Farm Mut. Auto. Ins. Co. v. Taylor, 233 So.2d 805 (Miss. 1970); Employers Reinsurance Corp., 767 F.Supp. at 1360 ("only if the pleadings state facts 'bringing the injury within the coverage of the policy' must the insurer defend").

The Court finds that the policy language is clear and unambiguous, and that the Court's construction of the policies effectuates the parties' intentions. Therefore, EMC is entitled to summary judgment. Accordingly,

IT IS HEREBY ORDERED that the plaintiff Employers Mutual Casualty Company's motion for summary judgment **(docket entry 37)** is GRANTED;

FURTHER ORDERED that defendant Yazoo City Medical Clinic's cross motion for declaration of duty to defend and/or declaration of coverage **(docket entry 50)** is DENIED;

FURTHER ORDERED that the plaintiff is granted a declaratory judgment as follows:

The wrongful acts complained of in the Underlying Amended Complaint, and/or their discovery, are outside the policy periods of the EMC policies;

The Underlying Amended Complaint (1) does not allege "bodily injury," "property damage," or "personal or advertising injury" as defined in the EMC policies; (2) does not allege an "occurrence" as defined in the EMC policies and as governed by Mississippi law; and/or (3) the allegations of the Underlying Amended Complaint are excluded by the "expected or intended injury" exclusion, the "professional services" exclusion, and the "abuse or molestation" exclusion.

A separate final judgment shall follow in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED, this the 30th day of March, 2012.


/s/ David Bramlette
UNITED STATES DISTRICT JUDGE